**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JESUS O.,[1]**

        **Plaintiff,**

                                    **Case No. 2:22-cv-5637**
    **v.**                                **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

        **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jesus O. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 7, 2011, and March 18, 2011, respectively, alleging that he has been disabled

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

since March 22, 2011. R. 71, 88–89, 106–07, 220–34. The applications were denied initially and upon reconsideration. R. 108–13, 117–22. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 123. ALJ Donna Krappa held hearings in July and November 2013, at which Plaintiff, who was represented by counsel, appeared and testified, R. 46–63, as did a vocational expert, R. 26–45. In a decision dated December 4, 2013, ALJ Krappa concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 22, 2011, Plaintiff's alleged disability onset date, through the date of that decision. R. 7–25 ("2013 decision"). Plaintiff appealed from that decision and, on October 25, 2016, this Court reversed the 2013 decision and remanded the matter for further proceedings. R. 555–68 ("2016 Remand Order"). In doing so, this Court concluded *inter alia*, that the ALJ had not sufficiently explained her reasoning for discounting the opinion of Dr. Arden Fusman regarding Plaintiff's ability to walk and stand for extended periods of time. *Id*. at 567–68.

On remand, the ALJ held another hearing at which Plaintiff, who was again represented by counsel, again appeared and testified, as did a vocational expert. R. 494–525. In a decision dated November 6, 2017, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 22, 2011, Plaintiff's alleged disability onset date, through the date of that decision. R. 480–88 ("the 2017 decision"). On appeal, this Court again reversed that decision and remanded the matter for further proceedings. R. 782–93 ("2020 Remand Order"). In doing so, this Court noted discrepancies in opinion evidence regarding Plaintiff's ability to walk and stand for extended periods of time and directed the ALJ to resolve those discrepancies:

> In its [2016] remand order, the District Court directed the ALJ to "provide an explanation as to Plaintiff's ability to walk and stand for extended periods of time. Tr. 568. On remand, however, while the ALJ accorded significant weight to both

Dr. Fusman's and the state consultants' opinions, she did not resolve the apparent discrepancy between their opinions. As noted above, Dr. Fusman opined that Plaintiff was "limited in his ability to walk and stand for long periods." Tr. 445. By contrast, the state consultants found that Plaintiff was able to stand and/or walk for approximately six hours in an eight-hour workday. Tr. 76, 95. The ALJ concluded that these opinions were consistent with the medical record as a whole, Tr. 485-86, but did not, contrary to the District Court's [2016] remand order, provide any reason for discounting any portion of the opinions.

The Commissioner's argument that remand is not warranted because the vocational expert identified sedentary work that Plaintiff could perform is unavailing. See Def. Mem. at 10-11. At step five, the ALJ relied on the vocational expert's opinion that Plaintiff was capable of performing certain jobs that only require[d] standing or walking for 1/3 of the work day, which would be only 2 and 2/3 hours of the work day.Tr. 487-88; see also Tr. 516 (ALJ posing hypothetical to vocational expert based on someone who can perform the demands of sedentary work . . . stand or walk two hours in an eight-hour day). Before the Court can meaningfully review whether Plaintiff is able to perform these jobs, however, the opinions of Dr. Fusman and the state consultants must be reconciled. Therefore, the ALJ is directed to resolve the discrepancy between these opinions and specifically explain "Plaintiff's ability to walk and stand for extended periods of time.["] Tr. 568. In making the disability determination on remand, the ALJ should consider: (1) whether the fact that Dr. Fusman found Plaintiff "limited in his ability to walk and stand for long periods["] precludes Plaintiff from performing the sedentary work identified by the vocational expert; and (2) Dr. Fusman's note that Plaintiff cannot walk at a reasonable pace. Tr. 445,447[.]

R. 789–90.

On this second remand, which was assigned to ALJ Sharon Allard, Plaintiff, who was again represented by counsel, appeared and testified at another hearing, as did a vocational expert. R. 734–64. In a decision dated May 27, 2022, ALJ Allard also concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 22, 2011, Plaintiff's alleged disability onset date, through the date of that decision. R. 713–25 ("2022 decision"). That decision became final pursuant to 20 C.F.R. §§ 404.984(d), 416.1484(d) and Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 29, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On March 30, 2023,

the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or

combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2022 DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016. R. 716. He was 43 years old on March 22, 2011, his alleged disability onset date. R. 723. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the 2022 decision. *Id*.

At step two, the ALJ found that Plaintiff's lumbar spine disorder and obesity were severe impairments. *Id*. The ALJ also found that Plaintiff's alleged mental disorder was not a medically determinable impairment. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 716–17.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

8

various additional limitations. R. 717–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a forklift operator or warehouse worker. R. 723.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a preparer, a scale operator, and a table worker—existed in the national economy and could be performed by Plaintiff. R. 723–24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 22, 2011, his alleged disability onset date, through the date of the 2022 decision. R. 725.

Plaintiff disagrees with the ALJ's findings at steps three and four and contends that the ALJ failed to comply with the 2020 Remand Order. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 9. The Commissioner takes the position that the 2022 decision should be affirmed in its entirety because the decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Arden Fusman, M.D.

On November 30, 2011, Arden Fusman, M.D., conducted a consultative examination of Plaintiff. R. 444–47. Dr. Fusman reported Plaintiff's history as follows:

> Patient is a 41-year-old Hispanic male with past medical history significant for back pain, herniated disk who comes in today *complaining of chronic back pain with radiation down both his legs. He states he has constant pains in his legs and he needs to keep both his legs moving.* On August 18, 2010, he had an MRI of his low back, which showed small central L4-L5 disk herniation and mild left-sided L5-S1 foraminal narrowing. No significant change. He also had an x-ray of his thoracic spine on February 14, 2011, which showed normal exam of thoracic spire. He had ex-ray of his lumbar spine on February 14, 2011 which showed normal exam of the

9

lumbar spine and he did have an epidural injection of his lumbar spine. A left-sided transforaminal epidural steroid injection at L4, L5, and S1 on February 2, 2810. He says he is limited in his ability to work secondary to the chronic low back pain.

R. 444 (emphasis added). Dr. Fusman noted that Plaintiff takes gabapentin, Percocet, Motrin, ibuprofen, and finasteride, and that he "states he uses a cane at times, but he did not bring one today. He does need help sometimes putting on his socks and sometimes bathing. He last worked as a forklift driver and he stopped working 14 years ago." *Id*. On physical examination, Dr. Fusman noted as follows:

> [Plaintiff] is 41 years old, 68 inches, and 238 pounds. He is alert and oriented x3. Follows commands. Bilateral upper extremities strength 5/5. Bilateral lower extremity strength 5/5. Reflexes are 2+ and symmetrical. Sensation normal. He has limited range of motion of lumbar spine flexion 40, lateral flexion right 10 and left 10. Positive straight leg raising test both sides worse on the right than on the left. He is able to squat halfway down. He can walk on his heels and toes. He has a slow wide-based gait, but he does not use a cane. He has some difficulty getting off the chair, some difficulty going from supine to sitting and standing up on the exam table. *He is limited in his ability to walk and stand for long periods*. He can lift and carry approximately 15 pounds. Bend, crouch, and stooping is limited secondary to his back pain. His vision and hearing appear to be within normal limits, were not formally tested. He is able to sit for extended period of time.

R. 445 (emphasis added); *see also* R. 447 (reflecting range of motion findings for lumbar spine).

Dr. Fusman assessed "chronic low back pain with straight leg raising test bilaterally much worse on the right than on the left with small central L4-L5 disk herniation with mild left-sided L5-S1 foraminal narrowing, possible radiculopathy worse on the right than on the left." R. 445. Asked whether Plaintiff could "walk at a reasonable pace[,]" Dr. Fusman checked the box marked "No." R. 447. Dr. Fusman also denied that Plaintiff used a hand-held assistive device. *Id*.

**B.    State Agency Review**

Seung Park, M.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 21, 2011. R. 72–87. Dr. Park opined, *inter alia*, that Plaintiff could lift/carry 20 pounds occasionally (cumulatively one-third or less of an eight-hour day) and 10

pounds frequently (cumulatively more than one-third up to two-thirds of an eight-hour day). R. 76, 84. Dr. Park further opined that Plaintiff could stand and/or walk for a total of about 6 hours and could sit for a total of about 6 hours in an eight-hour day. *Id*. Referring to Plaintiff's back pain. Dr. Park also opined that Plaintiff could occasionally climb ramps/stairs; climb ladders/ropes/scaffolds; balance; stoop (bend); kneel; crouch; and crawl. R. 85, 77. Under the heading "RFC – Additional Explanation[,]" Dr. Park explained as follows:

> This 42 y /r old clt. alleges a disability due to back pain. AOD = 3/22/2011
> DLI = 12/31/2015
> AOL: clt. does house chores and does exercises. Personal care, to put socks and pants is difficult. FO observed no difficulty on 3/18/2011
> ME:
> On 11/30/2011, clt. has back pain and radiating pain to both LE.
> MRI of the L-S spine on 8/18/2010, small central L4-5 disc herniation and mild left sided L5-S1 foraminal narrowing.
> X-ray of the thoracic spine on 2/14/2011, normal. X-ray of the L-S spine on 2/14/2011, normal.
> Clt. received epidural steroid inecjtiosn [sic]. At L4-5, Clt. received epidural steroid injection x 2 in 2007 and 2009.
> L-S spine; ff 40 deg. UE and LE, m.s. 5/5 s/w with heels and toes. But clt. walks with wide based gait. Clt. has some difficulty to get on and off the exam table. Clt. walk at reasonable pace.
>
> Based on above m.e. clt. has MDI of the DJD of the L-S spine and radiculopathy.
> Pain and allegation are supported by m.e.
> Clt. is credible re: pain.
> . . . RFC is decreased as (la) s/w and sit 6 hrs. l/c 10/20 lbs. Unlimited. (lb) climbing-crawling occ. (lc) unlimited.
> Onset date = 3/22/2011 if above RFC is an allowance.

R. 77–78, 85–86.

Jyothsna Shastry[4] reviewed Plaintiff's medical record on reconsideration for the state agency on February 29, 2012. R. 90–105. Consultant Shastry agreed with Dr. Bank's opined exertional and postural limitations. R. 94–95, 102–03. Under the heading, "Reconsideration

---

[4] This consultant's credentials do not appear in the record. For ease of reference, the Court refers to this person as "Consultant Shastry."

Analysis[,]" Consultant Shastry noted as follows:

> PHYSICAL
>
> Appeal of LIGHT RFC by 41 yom w/ allegatns of herniated discs;
> past Jan 2010 Ox Lumbar displaced intervert. disc w/o myelopathy / / attendd [sic]
> late NOV 2011 ORTHO CE - >
> LEs normal str, able to sit for extended time, able to walk on heels/toes & squats
> 1/2-way no HHAD @ CE but reportdly uses one.
>
> / / 8/09 MRI: L4 /L5 & LS/s 1 (sm) herniations. L5Meds Gabapentin, Percocet,
> Motrin, Finasteride.
> On Appeal NO WORSENING, No new OVs or new sources
> Affirmation of Light RFC proposed, no worsening, Other work denial.

R. 93, 101. Under the heading "RFC – Additional Explanation[,]" Consultant Shastry repeated

Dr. Bank's explanation and noted further: "RECON CASE: 2/29/12. Cl. Does not allege any

worsening and there is no new MER. revd. all MER and above RFC is affirmed."  R. 95–96,

103–04.

### C.    Dewan Khan, M.D.

On May 3, 2017, Dewan S. Khan, M.D., Plaintiff's treating physician, signed a one-page,

check-the-box, and fill-in-the-blank form entitled, "Application for Vehicle License Plates

And/Or Placards for Persons With a Disability." R. 647. In response to the statement that, "[b]y

law, eligibility for license plates and/or a placard for persons with a disability is limited to the

following conditions. (*NO OTHER PERSON IS ELIGIBLE FOR LICENSE PLATES AND/OR A*

*PLACARD*)[,]" Dr. Khan wrote Plaintiff's name and circled the statement that Plaintiff "[i]s

severely and permanently limited in the ability to walk because of an arthritic, neurological, or

<u>orthopedic condition</u>; or cannot walk two hundred feet without stopping to rest." *Id*. (reflecting

that Dr. Khan underlined the words "orthopedic condition") (emphasis in the original).

In a letter dated May 23, 2017, addressed "To Whom It May Concern[,]" Dr. Khan

wrote: "I am Dr. Dewan S. Khan M.D. Primary Care 02/20/1969. Jesus suffers from back pain

due to lumber herniated disc and hyperlipidemia. If you have any questions please feel free to contact me at the below address and/or telephone." R. 646.

### D.    Grace Szenkiel, M.D.

On December 20, 2012, Grace Szenkiel, M.D., another treating physician, completed a check-the-box and fill-in-the-blank form entitled, "Residual Functional Capacity Form Physical." R. 457–60. Dr. Szenkiel opined that Plaintiff was limited to lifting/carrying 10 pounds occasionally and 8 pounds frequently. R. 457 (leaving blank the question asking for medical findings that support this assessment). Dr. Szenkiel also opined that Plaintiff could walk 1 to 2 hours in an 8-hour day and 1 hour without interruption. R. 458 (leaving blank questions asking for medical findings that support this assessment). Plaintiff could sit for 3 hours in an 8-hour day; could sit for 0.5 hours without interruption; and could occasionally climb, balance, stoop, crouch, kneel, and crawl. *Id.* (leaving blank questions asking for medical findings that support this assessment). According to Dr. Szenkiel, pushing/pulling were affected by Plaintiff's impairment, but not his reaching, handling, feeling, seeing, hearing, and speaking. R. 459 (leaving blank question asking for medical findings that support this assessment). Plaintiff's impairments required a limitation in his exposure to heights and machinery, but not in exposure to temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. *Id.* (leaving blank questions asking how environmental restrictions affect Plaintiff's activities and what medical findings that support this assessment). *Id.*[5]

On June 2, 2017, Dr. Szekiel completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Residual Functional Capacity Questionnaire." R. 676–77. Dr. Szekiel's response

---

[5] Dr. Szenkiel's handwritten response of three lines to the question, "State any other work-related activities which are affected by the impairment, and indicate how the activities are affected. What are the medical findings that support this assessment?", is illegible. R. 460.

to the questions regarding the nature, frequency, and length of contact with Plaintiff and regarding the doctor's diagnosis and prognosis are illegible. R. 676. Asked to identify Plaintiff's symptoms, Dr. Szekiel responded "daily pain"; the remainder of the response is illegible. *Id*. In response to the question regarding medication side effects, Dr. Szekiel simply listed Plaintiff's medications. *Id*. Dr. Szekiel agreed with the question: "Would your patient need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon[.]" *Id*. According to Dr. Szekiel, Plaintiff could walk one city block without rest or significant pain; could sit for 30 minutes and could stand/walk for 30 minutes at a time; could sit for a total of 1 hour; and could stand/walk for a total of 2 hours in an 8-hour day. *Id*. Dr. Szekiel opined that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking and would need to take 15-minute unscheduled breaks every 30 minutes. *Id*. Plaintiff could frequently lift/carry less than 10 pounds and could occasionally lift/carry up to 20 pounds, but had no limitations in repetitive reaching, handling, or fingering. R. 677. Plaintiff would miss work once or twice a month as a result of his impairments or treatment. *Id*. Dr. Szekiel checked the box marked "No" when asked, "Are your patient's impairments (physical impairments plus an emotional impairments) reasonably consistent with the symptoms and functional limitations described in this evaluation?", but did not respond to next question, "If no, please explain[.]" *Id*. Dr. Szekiel also denied that Plaintiff was "physically capable of working an 8 hour day, 5 days a week employment on a sustained basis[.]" *Id*.

V.    **DISCUSSION**

A.    **The 2020 Remand Order**

Plaintiff first argues that the 2022 decision failed to comply with the Court's 2020

Remand Order. *Plaintiff's Moving Brief*, ECF No. 9, pp. 13–37. Plaintiff specifically argues that

the 2022 decision provided flawed reasons for discounting Dr. Fusman's opinion and failed to

fully explain her reasoning in this regard. *Id*. For the reasons that follow, this Court disagrees.

In the 2022 decision, the ALJ found that Plaintiff was capable of a limited range of light

work:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except he can lift/carry 20 pounds occasionally
> and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday (if given
> the opportunity at the 45 minute to one hour mark to stand and stretch for three to
> five minutes); and perform unlimited pushing and pulling within the weight
> restriction given. In addition, the claimant must be able to sit and stand at will
> during the workday. Further, as to the mental demands of work, the undersigned
> finds that the claimant is able to perform jobs that are simple and repetitive.

R. 717–18. At step four of the sequential evaluation, the ALJ also specifically acknowledged the

directive of the 2020 Remand Order and she explained her consideration of the opinions of Dr.

Fusman and the state agency reviewing consultants in accordance with that directive:

> As for the opinion evidence, as requested by District Court the ALJ has reconciled
> the apparent inconsistency between the opinion of consultative examiner Arden
> Fusman, M.D., and the State medical consultants by finding Dr. Fusman's opinion
> is accorded only partial weight as Dr. Fusman provided a limited function
> assessment of the claimant's ability to perform mental or physical work-related
> activities. In November 2011, Dr. Fusman opined that the claimant had a limited
> ability to stand and walk for long periods; he can lift/carry approximately 15
> pounds; and had limited ability to bend, crouch, and stoop (7F). At the examination,
> he acknowledged the claimant's complaint of back pain, which radiated down both
> of his legs and that he sometimes used a cane to help him ambulate (Exhibit 7F, 1).
> He noted that the claimant had a "small" disc herniation in the lumbar spine with
> "mild" left-sided foraminal narrowing with possible radiculopathy, which was
> worse on the right than on the left (7F, 2). Upon examination, Dr. Fusman observed
> that the claimant presented with a slow, wide-based gait; the doctor noted that the

15

claimant did not bring a cane to the examination, and he could walk on his heels and toes (7F, 1-2). The claimant also had positive straight leg raising testing bilaterally, which was worse on the right than on the left (7F, 2). In addition, he had some difficulty getting off the chair as well as going from a supine to sitting and standing positions; however, he was able to squat halfway down (7F, 2). Further, Dr. Fusman indicated that the claimant's strength in his upper and lower extremities was "5/5" (7F, 4). Dr. Fusman's finding that the claimant is "limited in his ability to walk and stand for long periods" and "cannot walk at a reasonable pace" is found to have only partial weight to the extent it supports the claimant has limitations in walking and standing. However, Dr. Fusman's findings do not provide specific vocational limitations in terms of a specific amount of time he believes the claimant can stand or walk. Nowhere in his opinion does Dr. Fusman define "long periods." Moreover Dr. Fusman's findings were based on a one-time examination of the claimant and based on the claimant's subjective presentation at the time of the examination. Dr. Fusman's opinion that the claimant cannot walk at a reasonable pace or stand or walk for long periods of time in addition to being vague is not supported by the record before or after the November 2011 examination as there do not appear to be any other treatment records to support the claimant's asserted limitations with standing and ambulating.

R. 720–21.

In December 2011, Seung Park, M.D., with the State agency, opined that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl (4A-5A). In March 2012, Jyothsna Shastry, also with the State agency, opined the same (8A-9A). These doctors based their opinions on the claimant's back pain, they are familiar with the Social Security disability program, and the evidence of record established these restrictions. He had documented degenerative changes in his back with a history of injections (1F, 1, 15, 20; 14F, 58). At his November 2011 consultative examination, he ambulated with a slow, wide-based gait (7F, 2). His lumbar spine exhibited a limited range of motion (7F, 2). Straight leg raising was positive bilaterally (7F, 2; 14F, 9). He could only squat halfway down (7F, 2). He also had some difficulty getting off a chair, going from supine to sitting, and standing up on an exam table (7F, 2). Additionally, treating providers consistently noted that he was positive for lower back tenderness from 2012 to 2016 (12F, 14; 14F, 5-17, 37-41, 44-52). In March 2014, he reported that his back pain radiated to his right leg, and it burned (14F, 50). In October 2015, he reported that his back pain radiated to his left leg (14F, 16). August 2016 records indicated that his back pain radiated to his left leg after he stopped Gabapentin, and his record also reflected that he took Gabapentin from March 2014 to July 2015 (14F, 21-22). However, August 2010 and February 2011 lumbar spine imaging was normal without evidence of fracture, subluxation, focal areas of bone destruction, spondylolysis, spondylolisthesis, or significant intervertebral disc space narrowing (4F, 1, 4; 6F, 31). His August 2015 MRI showed no spondylolisthesis (14F, 58). From 2012 through 2016, the claimant was not in acute distress at appointments,

> which is inconsistent with the alleged frequency and severity of pain, and he had full ranges of motion in all of his extremities without deformities, edema, and erythema (14F, 5-17, 21, 37, 40-41, 44-52). While he reported that he used a cane to ambulate at times at his November 2011 consultative examination, he did not use one that day, and treating provider notes did not establish that he used one at their appointments either (7F, 1). He demonstrated 5/5 strength in his bilateral upper and lower extremities (7F, 2). He possessed normal sensation and reflexes (7F, 2, 4). He could walk on his heels and toes (7F, 2). His shoulders, elbows, wrists, knees, hips, ankles, and neck all demonstrated normal range of motion (7F, 3). Moreover, he told providers that he experienced some improvement in pain with physical therapy (14F, 14-15, 39). Thus, the undersigned affords great weight to these opinions.

R. 721–22. As detailed above, the ALJ explained that Dr. Fusman's opinion was entitled to only partial weight because, although the doctor's findings—*i.e.*, that Plaintiff was "limited in his ability to walk and stand for long periods" and that Plaintiff "cannot walk at a reasonable pace"—supported some limitation in standing and walking, he failed to specify any particular functional or vocational limitation, R. 720–21. The Court agrees that the ALJ properly discounted Dr. Fusman's opinion on this basis. *See Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his statements of disability *or articulate any specific functional limitations* suffered by [the claimant].") (emphasis added); *Muschko v. Comm'r Soc. Sec.*, No. 20-2771, 2021 WL 3666638, at *3 (3d Cir. Aug. 18, 2021) (stating that "[t]he ALJ was required to determine how much weight to afford the medical opinions, *see* 20 C.F.R. § 404.1527(c), and [it] was well within his discretion to not credit the doctors' conclusory statements" where the ALJ did "not credit [the physicians'] conclusory statements about [the claimant's] ability to maintain gainful employment where those statements *were not supported by a function-by-function assessment* of [the claimant's] abilities and were contradicted by record evidence") (emphasis added); *Woodruff v. Saul*, No. CV 20-946, 2021 WL 2012568, at *7–8 (E.D. Pa. May 20, 2021)

17

("Plaintiff also argues that the ALJ improperly rejected Dr. Tabby's opinion on the grounds that the doctor failed to provide a function-by-function analysis. . . . Given that Dr. Tabby offered an extremely general opinion that lacked an explanation in vocational terms, the ALJ's approach is understandable and supported by both controlling regulations and case law.") (citing, *inter alia*, 20 C.F.R. § 404.1527(c)(3)); *Perry v. Saul*, No. 1:19-CV-1923, 2021 WL 1701300, at *17 (M.D. Pa. Apr. 29, 2021) (finding that the ALJ "adequately discussed" the medical opinions and weight assigned to such opinions where, *inter alia*, the ALJ considered an opinion from a treating physician "but she concluded that it had little evidentiary weight due to the fact that no specific functional limitations were noted"); *Akrigg v. Comm'r of Soc. Sec.*, No. CV 17-0237, 2018 WL 1378699, at *8 (D.N.J. Mar. 19, 2018) (rejecting the plaintiff's argument that the ALJ's grant of "partial weight" to the consultative examiner's "assessment failed to inform subsequent reviewers—*i.e.*, this Court—of the basis for the ALJ's weighing of the evidence" where "the ALJ clearly noted some deficiencies in [the consultative examiner's] examination, such as not assigning a specific functional limitation to Plaintiff that quantified her exertional capacity, which justify attaching less weight to [the] opinion"). In contrast, the ALJ explained why the record evidence, including the evidence of physical examinations revealing normal muscle strength, sensation, and reflexes in his extremities and evidence that he could walk on his heels and toes, supported the state agency consultants' opinions for light exertional work, which was therefore entitled to great weight. *See* R. 721–22; *see also Hoynoski v. Saul*, No. CV 19-1335-MPT, 2020 WL 4504603, at *11 (D. Del. Aug. 5, 2020) (finding that the "ALJ properly gave the non-examining state agency consultants' assessments great weight in their determinations of Plaintiff's physical limitations" to perform light exertional work "because of their consistency with the evidence of record, specifically Plaintiff's conservative management of her pain

symptoms through medication only, a continuously observed normal gait, intact balance, and absence of any need for an assistive device to ambulate"); *Quinn v. Saul*, No. 3:20-CV-00813, 2021 WL 1695186, at *7 (M.D. Pa. Apr. 29, 2021) (affirming denial of benefits where, *inter alia*, the ALJ assigned "great weight" to state agency reviewing medical consultants who found Plaintiff was capable of light work where the "examining medical sources indicated normal gait, normal and symmetric reflexes, no motor or sensory deficits, and normal upper extremity strength"). In other words, the ALJ properly explained her consideration of the opinions of Dr. Fusman and of the state agency experts, and the ALJ's 2022 decision sufficiently complies with the 2020 Remand Order.

Plaintiff also raises a number of challenges to the ALJ's consideration of Dr. Fusman's opinion. First, Plaintiff complains that the ALJ improperly discounted this opinion because it was purportedly "vague." *Plaintiff's Moving Brief*, ECF No. 9, p. 25 n.7. Plaintiff notes that SSR 83-10 provides that a light exertional job "requires a good deal of walking or standing — the primary difference between sedentary and most light jobs." *Id*. (quoting SSR 83-10, 1983 WL 31251, at *5 (1983)) (internal quotation marks omitted); *see also* SSR 83-10, 1983 WL 31251, at *5–6 ("The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Plaintiff acknowledges that "Dr. Fusman's report does not specify *how many hours* are understood by 'long periods,'" but nevertheless insists that "it could not be more clear that the inability to stand and walk for long periods, the slow wide-based gait and the difficulty merely arising from a chair or assuming a standing position could not possibly accommodate 6-8

19

hours on one's feet." *Plaintiff's Moving Brief*, ECF No. 9, p. 25 n.7 (arguing further that "[w]e []

experience evidence nullification based on lay speculation"); *see also id*. at 26 (arguing that

"long periods" is not vague and that, "[i]n vocational terms, that means that he can't sustain light

work"). This Court disagrees. As Plaintiff concedes, Dr. Fusman did not specify the durational or

distance terms in Plaintiff's ability to stand or walk. *Plaintiff's Moving Brief*, ECF No. 9, p. 25

n.7. While Plaintiff asserts that "it could not be more clear that" Dr. Fusman's opinion precludes

the stand/walk requirement of light work, he cites to no evidence or authority to support this

assertion, which amounts to nothing more than rank speculation. *See id*. Accordingly, the ALJ

properly found that, *inter alia*, Dr. Fusman's opinion that Plaintiff was "limited in his ability to

walk and stand for long periods" was vague and of limited persuasive value. R. 720–21; *see also

Rice v. Kijakazi*, No. 3:20-CV-00750-RSE, 2022 WL 345652, at *4 (W.D. Ky. Feb. 4, 2022)

(finding that the ALJ appropriately accepted one physician's findings instead of another's

"ambiguous limitation on 'safety-sensitive duties' generally and walking or standing 'for long

periods'"); *Daywalt v. Kijakazi*, No. 1:20CV277, 2021 WL 3679304, at *10 (M.D.N.C. Aug. 19,

2021) ("Without quantifying 'a longtime [sic]' (Tr. 564), Dr. Williams's opinion lends little

guidance to the ALJ in determining how long Plaintiff could stand.").

      Plaintiff next complains that, although the ALJ accorded "partial weight" to Dr.

Fusman's opinion, the ALJ did not explain what that means and "what parts of the report are or

aren't viewed as supported by the evidence[.]" *Plaintiff's Moving Brief*, ECF No. 9, p. 25 n.7.

Plaintiff's argument is not well taken. As detailed above, the ALJ specifically explained that her

award of "partial weight" to Dr. Fusman's opinion resulted in her finding that Plaintiff has some

limitations in walking and standing. R. 720. As previously discussed, the ALJ further explained

that Dr. Fusman's opinion did not provide specific vocational limitations and did not define

"long periods," which supports the ALJ's failure to award greater weight to this opinion. R. 720–21. In short, the ALJ's discussion belies Plaintiff's assertion that the ALJ did not properly explain her award of "partial weight" to Dr. Fusman's opinion.

Plaintiff further contends that the ALJ erred in rejecting Dr. Fusman's opinion because it was based on a one-time evaluation and because of that physician's purported reliance on Plaintiff's subjective presentation during the examination. *Plaintiff's Moving Brief*, ECF No. 9, p. 25 n.7; *id*. at 26 n.9. The Court is not persuaded that these issues require remand. As discussed above, the ALJ properly discounted Dr. Fusman's opinion to the extent that it was vague and not supported by the record. R. 720–21. Substantial evidence supports the ALJ's decision to discount Dr. Fusman's opinion. Moreover, the factors challenged by Plaintiff were but two factors that the ALJ considered in discounting Dr. Fusman's opinion. Under these circumstances, the Court cannot say that remand is required on this basis.

Plaintiff argues that the ALJ erred in discounting Dr. Fusman's opinion on the ground that it was "not supported by the record[.]" *Plaintiff's Moving Brief*, ECF No. 9, pp. 26–36. Plaintiff first complains that the ALJ "does not specify any contradictory portion of that 'record'" in the 2022 decision. *Plaintiff's Moving Brief*, ECF No. 9, p. 26. Plaintiff's argument is not well taken. The ALJ detailed the objective record evidence throughout step four, noting, *inter alia*, that Plaintiff's providers did not recommend surgery and suggested only nonsurgical treatment; that lumbar spine imaging in August 2010 and February 2011 was normal without evidence of fracture, subluxation, focal areas of bone destruction, spondylolysis, spondylolisthesis, or significant intervertebral disc space narrowing; that an August 2015 MRI showed no spondylolisthesis; that many records from 2011, 2012, and 2013 appeared routine in nature with simple medication refills; that from 2012 through 2016, Plaintiff was not in acute

21

distress at appointments, notations that the ALJ found were inconsistent with Plaintiff's alleged

frequency and severity of pain and with findings of normal curvature and full ranges of motion in

all of his extremities without deformities, edema, erythema, or localized neurological findings;

that although Plaintiff reported to Dr. Fusman in November 2011 that he used a cane to

ambulate, Plaintiff did not use one during that examination and treating provider notes did not

establish that he used one at their appointments; that he demonstrated 5/5 strength in his bilateral

upper and lower extremities with normal sensation and reflexes; that he could walk on his heels

and toes; that his shoulders, elbows, wrists, knees, hips, ankles, and neck all demonstrated

normal range of motion; that records from August 2015 indicated that he had started physical

therapy and, in September 2015, had shown some improvement in pain; that records from April

2016 reflected that his back pain had shown some improvement with physical therapy; that

Plaintiff's April and November 2011 function reports indicated that he attended church three

times a week, which would have required some sitting for extended periods; and that in July

2014, he reported back pain after changing the tire on a car, which would have required some

degree of stooping, bending, kneeling, and/or crouching. R. 719–20. In other words, the ALJ's

summary at step four of specific record evidence that did not support Plaintiff's alleged

limitations on walking and standing, was sufficient even though the ALJ did not repeat that

summary when she considered Dr. Fusman's opinions. R. 719–21; *see also Jones v. Barnhart*,

364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ is not required to "use particular language

or adhere to a particular format in conducting his [or her] analysis" and instead must only

"ensure that there is sufficient development of the record and explanation of findings to permit

meaningful review"); *Parker v. Berryhill*, No. CV 16-1047, 2017 WL 1282579, at *3 (W.D. Pa.

Apr. 6, 2017) (finding that the ALJ gave "appropriate bases for rejecting a treating physician's

report" where the ALJ rejected the treating reports because, *inter alia*, they were "inconsistent with the medical record[,]" *i.e.*, "physical examinations documented normal cervical and lumbar spine range of motion, no back tenderness, normal extremities without deformities, edema or skin discoloration, normal motor function, normal sensory function, and normal gait and station" and "physical examinations documenting good strength throughout the lower extremities and normal reflexes") (citations omitted); *cf. Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

Plaintiff also insists that the ALJ erred in finding that Dr. Fusman's opinion was not supported by the record because Dr. Khan, Dr. Szenkiel, and Dr. Fusman "agree that plaintiff cannot stand and walk 6 hours per day." *Plaintiff's Moving Brief*, ECF No. 9, p. 27. Plaintiff's argument is not well taken. As a preliminary matter and as detailed above, Dr. Khan did *not* opine that Plaintiff could not stand or walk for 6 hours a day; he simply checked a box in an application for a handicap license plate or handicap parking placard that Plaintiff was "severely and permanently limited in the ability to walk[.]" R. 647. Moreover, the ALJ explained why she discounted this opinion, as follows:

> In May 2017, Dewan Khan, M.D., a treating provider, opined that the claimant was severely and permanently limited in his ability to walk (13F). The undersigned notes that Dr. Kahn did not provide a specific function by function assessment of the claimant's ability to perform basic work functions and is not fully consistent with the record as a whole. Accordingly, the undersigned affords partial weight to Dr. Khan's opinion.

R. 722. The Court finds no error with the ALJ's consideration in this regard. *See* R. 719–20; *see also Kerdman*, 607 F. App'x at 144; *Muschko*, 2021 WL 3666638, at *3; *Woodruff*, 2021 WL 2012568, at *7–8; *Perry*, 2021 WL 1701300, at *17; *Akrigg*, 2018 WL 1378699, at *8.

Although Dr. Szenkiel did specify particular functional limitations in Plaintiff's ability to walk and stand, the ALJ accorded only "partial weight" to that opinion, reasoning as follows:

> In December 2012, Grace Szenkiel, M.D., a treating provider, opined that the claimant could lift/carry 10 pounds occasionally and 8 pounds frequently; stand/walk 1 hour at a time and 1-2 hours total in a day; sit for half an hour at a time and 3 hours in a day; occasionally climb, balance, stoop, crouch, kneel, and crawl; he has limited ability to push/pull; and he should avoid heights and moving machinery (11F). In June 2017, Dr. Szenkiel opined that the claimant could occasionally lift/carry 20 pounds and frequently lift/carry less than 10 pounds; his symptoms would frequently interfere with his attention and concentration to perform simple work-related tasks; he could sit for 30 minutes at a time and for an hour in a day; stand/walk 30 minutes at a time and 2 hours in a day; he required the ability to lie down or recline in excess of typical breaks throughout the day; he required a job that permitted him to shift at will from sitting, standing, and walking; he required unscheduled 15-minute breaks every 30 minutes; he would miss work once or twice a month due to his impairments or treatments; and he was not physically capable of working 8 hours a day 5 days a week on a sustained basis (14F, 29-30). However, Dr. Szenkiel's opinion is inconsistent with her own treatment notes, which only revealed consistent lower back tenderness from 2012 through 2016 (12F, 14; 14F, 5-17, 37-41, 44-52). She also once noted positive straight leg raising in July 2014 (14F, 9). However, at these same appointments, Dr. Szenkiel also noted that the claimant was not in acute distress, and he had full ranges of motion in all of her [sic] extremities (14F, 5-17, 21, 37, 40-41, 44-52). As a result, the undersigned affords partial weight to Dr. Szenkiel's opinion.

R. 722. Plaintiff challenges this evaluation, complaining that the ALJ improperly rejected Dr. Szenkiel's assessment on the ground that it was "inconsistent with the record," even though it included findings of positive straight leg raising and consistent low back tenderness. *Plaintiff's Moving Brief*, ECF No. 9, p. 36. Plaintiff further complains that findings of an ability to bend and flex his legs, *i.e.*, having full range of motion, are irrelevant. *Id*. Plaintiff's argument is not well taken. As detailed above, the ALJ considered contrary evidence from Dr. Szenkiel's treatment records and found that those records were not consistent with her extreme opinions. R. 722.

24

There was nothing improper with the ALJ's consideration in this regard. *See Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). To the extent that Plaintiff insists that record evidence supports his argument regarding Dr. Szenkiel's opinions, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose his — or this Court's — own factual determination. *See Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff seems to suggest that, because the 2013 and 2016 decisions accorded greater weight to Dr. Fusman's opinion than did the 2022 decision, the ALJ who issued the 2022 decision was therefore bound by those prior findings. *Plaintiff's Moving Brief*, ECF No. 9, pp. 27, 34. The Court rejects that suggestion. The Appeals Council vacated the 2013 and 2016 decisions; those decisions are therefore not before this Court for review nor do they mandate a certain finding or outcome. R. 574 (stating that "the Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court" and that "the Administrative Law

Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision"), 796 (same); *see also Davis v. Comm'r Soc*. Sec., 849 F. App'x 354, 358 (3d Cir. 2021) (noting that "when the Appeals Council 'remands a case . . . after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues de novo'") (quoting HALLEX I-2-8-18); *LeBron v. Comm'r of Soc. Sec*., No. CV 18-14630, 2020 WL 7768401, at *9 (D.N.J. Dec. 30, 2020) (finding that the ALJ issuing a later decision "was not bound by" the earlier ALJ's decision, which the Appeals Council vacated and remanded to a new ALJ with directions to, *inter alia*, "'take any further action needed to complete the administrative record and issue a new decision'").

In short, this Court concludes that the ALJ properly considered Dr. Fusman's opinion and, in doing so, sufficiently complied with the 2020 Remand Order. The Court therefore rejects Plaintiff's arguments based on his complaint that the ALJ failed to comply with the 2020 Remand Order.

### B.    Obesity

Plaintiff also argues that the ALJ failed to properly consider, at steps three and four of the sequential evaluation, Plaintiff's obesity. *Plaintiff's Moving Brief*, ECF No. 9, pp. 37–40. This Court disagrees.

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings."

*Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022)

(citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an

automatic designation of obesity as a listed impairment, based on a claimant's height and weight,

with an individualized inquiry, focused on the combined effect of obesity and other severe

impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was

superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not

materially amend SSR 00-3p." *Id*. (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-

01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to

the extent that the combination of impairments meets the requirements of a Listing. This is

especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be

true for other coexisting or related impairments, including mental disorders."). Most recently,

SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL

2374244, at *5 (May 20, 2019); *see also id*. at n.14 ("We will use this SSR beginning on its

applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after

the applicable date of the SSR and to claims that are pending on and after the applicable date.

This means that we will use this SSR on and after its applicable date in any case in which we

make a determination or decision. We expect that Federal courts will review our final decisions

using the rules that were in effect at the time we issued the decisions."). Other courts have

observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how

obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin*., No. 1:20CV2133, 2021 WL

6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck

v. Comm'r of Soc. Sec*., No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022)

(collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8

(M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI [medically determinable impairment]." *Id*. at *2. This ruling addresses the determination of obesity as a severe impairment, as follows:

> When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.
>
> No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id*. at *3–4 (footnotes omitted). SSR 19-2p also specifically advises how to evaluate obesity under the listings:

> Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.
>
> We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the

28

other impairment. We evaluate each case based on the information in the case record.

*Id*. at *4. (footnotes omitted); *see also id.* at n.11 (citing 20 C.F.R. § 416.926). Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with h[is] impairments, on h[is] workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10 ("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR 02-01p, the Commissioner fails to cite a single authority that challenges the applicability of *Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the claimant's] obesity . . . affect[s the claimant's] ability to perform basic work activities," not simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original).

In the present case, the ALJ found that Plaintiff's obesity was a severe impairment at step two of the sequential evaluation. R. 716. At step three, finding that none of Plaintiff's impairments and combination of impairments met or medically equaled a listed impairment, the ALJ specifically considered Plaintiff's obesity as follows:

There is no listing for obesity, but it can cause the claimant to meet or equal a listing in combination with other impairments pursuant to SSR 19-2p. The claimant's obesity was taken into consideration in determining residual functional capacity. The standing, walking, lifting, carrying, and postural limitations in the residual functional capacity are in part due to obesity.

R. 717. At step three, the ALJ also considered Listing 1.15, which addresses disorders of the spine resulting in compromise of the nerve root, and Listing 1.16, which addresses lumbar spinal stenosis resulting in compromise of the cauda equina. R. 716–17. When crafting Plaintiff's RFC for light work at step four, the ALJ again considered Plaintiff's obesity, R. 719, as well as other objective evidence related to Plaintiff's physical abilities and limitations, including, *inter alia*, the fact that Plaintiff's providers did not recommend surgery, but instead suggested nonsurgical treatment; the August 2010 and February 2011 lumbar spine imaging that was normal without evidence of fracture, subluxation, focal areas of bone destruction, spondylolysis, spondylolisthesis, or significant intervertebral disc space narrowing;  August 2015 MRI that showed no spondylolisthesis; the many records from 2011, 2012, and 2013 that appeared routine in nature with simple medication refills; that from 2012 through 2016, Plaintiff was not in acute distress at appointments, notations that the ALJ found were inconsistent with the alleged frequency and severity of pain, and findings of normal curvature and full ranges of motion in all extremities without deformities, edema, erythema, or localized neurological findings; that, although Plaintiff reported to Dr. Fusman in November 2011 that he used a cane to ambulate, Plaintiff did not use one during that examination and treating provider notes did not establish that he used one at their appointments; that Plaintiff demonstrated 5/5 strength in his upper and lower extremities with normal sensation and reflexes; findings that Plaintiff could walk on his heels and toes; notations that Plaintiff's shoulders, elbows, wrists, knees, hips, ankles, and neck demonstrated normal range of motion; August 2015 records that indicated that Plaintiff had

30

started physical therapy, and September 2015 records that reflected some improvement in pain; April 2016 records that reflected some improvement in back pain with physical therapy; Plaintiff's April and November 2011 function reports that indicated that Plaintiff attended church three times a week, which would have required some sitting for extended periods; and Plaintiff's July 2014 report of back pain after changing the tire on a car, which would have required some degree of stooping, bending, kneeling, and/or crouching. R. 719–20.

In light of this record, the Court disagrees with Plaintiff's contention that the ALJ failed to meaningfully evaluate his obesity at step three as required by *Diaz,* 577 F.3d 500, or at step four when crafting Plaintiff's RFC. *Plaintiff's Moving Brief*, ECF No. 9, pp. 37–40. In *Diaz*, the Court of Appeals for the Third Circuit remanded the case because the ALJ had found obesity to be a severe impairment at step two but did not discuss obesity at step three in combination with the claimant's joint dysfunction. *Diaz*, 577 F.3d at 504–05 (stating, *inter alia*, that "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court [and not remand the case]"). In the present case, the ALJ's express discussion of Plaintiff's obesity at step three in combination with his other impairments, R. 717, and again at step four in the context of his other physical impairments and symptoms, R. 719, serves to distinguish this case from *Diaz*. *See also Cherese M. B. v. Comm'r of Soc. Sec.*, No. CV 20-17718, 2024 WL 1270834, at *6–8 (D.N.J. Mar. 26, 2024) (distinguishing *Diaz* and noting that the ALJ discussed the claimant's obesity specifically during each step of the sequential process and explicitly stated that he had considered the claimant's obesity in combination with her other impairments, which "is sufficient to satisfy the standard set forth in *Diaz*"); *Leonardis v. Comm'r of Soc. Sec.*, No. CV 18-13098, 2020 WL 6281606, at *3 (D.N.J. Oct. 27, 2020) (distinguishing *Diaz* and finding that the ALJ's statement that he considered obesity in accordance with the applicable Social

Security rulings along with a discussion of the claimant's impairments was sufficient under Third Circuit law); *Farmer v. Comm'r of Soc. Sec.*, No. CV 19-13437, 2020 WL 6620152, at *2 (D.N.J. Nov. 12, 2020) (same); *cf. C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *5 (D.N.J. Nov. 9, 2021) ("Moreover, Plaintiff has failed to identify any record evidence showing that a more thorough consideration of obesity would have changed the ALJ's analysis. As such, the ALJ's analysis at step three was sufficient.").

Moreover, even if the ALJ's discussion at steps three and four were somehow deficient under *Diaz*, Plaintiff has not shown how any such error worked to his prejudice. Plaintiff does not explain how his obesity, individually or in combination with any other impairment, meets or medically equals a listed impairment, nor does he identify any specific functional limitation caused by his obesity that was not already included in the ALJ's RFC. *See generally Plaintiff's Moving Brief*, ECF No. 9. Neither the ALJ nor this Court will "make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment." SSR 19-2p, 2019 WL 2374244, at *4 (emphasis added); *see also Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (finding that, where the claimant "fails to identify how his obesity would affect the five-step-evaluation process beyond a mere generalized response that it would 'obviously negatively impact [his] COPD and back pain[,]'" "remand is not required because Cosme has failed to demonstrate how consideration of his obesity would affect the outcome of the case") (citations omitted); *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her

obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."). Accordingly, Plaintiff, who bears the burden of proof at steps three and four of the sequential evaluation, has not shown that the ALJ's error, if any, in failing to more thoroughly discuss Plaintiff's obesity is anything other than harmless error that does not require remand. *See also Abigail L.*, 2022 WL 16362468, at *10 ("[E]ven assuming that Plaintiff is correct that the ALJ's analysis was deficient at steps three and four, Plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits.").

## VI.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 26, 2024                        *s/Norah McCann King*
                                                 NORAH McCANN KING
                                                 UNITED STATES MAGISTRATE JUDGE

33